COMMONWEALTH *vs.* MELISSA JO CORDLE.

Barnstable. November 5, 1991. - March 11, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal*, Required finding, Instructions to jury, Sequestration of jury, Capital case. *Evidence*, Nonexistence of evidence. *Jury and Jurors.*

At a murder trial the evidence at the close of the Commonwealth's case-in-chief and at the close of all the evidence was sufficient to submit to the jury, and the judge properly denied the defendant's two motions for required findings of not guilty. [173-175]

In the circumstances of the evidence at a murder trial, the judge did not err in refusing to give a specific requested instruction that inferences favorable to the defendant might be drawn from the Commonwealth's failure to conduct certain forensic tests, where the judge gave a general instruction on inferences and where defense counsel was allowed to argue the point to the jury. [176-178]

At a criminal trial the judge's general instruction regarding inferences created no substantial likelihood of a miscarriage of justice. [178]

At a murder trial the judge properly denied the defendant's motion to sequester the jury and there was no merit to the defendant's contention that the impanelled jury was not impartial. [178-180]

INDICTMENTS found and returned in the Superior Court Department on June 25, 1985.

After the decision of this court in 404 Mass. 733 (1989), the cases were retried before *John J. Irwin, Jr.*, J.

*Bruce Ferg* for the defendant.

*Julia K. Vermynck*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. Having been found guilty by a jury in the Superior Court for Barnstable County, the defendant, Melissa Jo Cordle, appeals from her convictions for murder in the first degree of Ralph D. Anderson and Frances H.

Schiappa, and for burglary. The defendant's original convictions were set aside by this court, and the case was remanded for retrial because of an error in the trial judge's charge to the jury. *Commonwealth* v. *Cordle*, 404 Mass. 733, 742-743 (1989) (*Cordle I*). The defendant now claims that the judge[1] at retrial erred by (1) denying her motions for required findings of not guilty, (2) refusing to instruct the jury that they could draw inferences favorable to the defendant based on the failure of the police to conduct certain forensic tests, and (3) refusing to sequester the jury at the outset of the trial. The defendant also requests that this court exercise its power under G. L. c. 278, § 33E (1990 ed.), and grant her a new trial or reduce the verdicts to murder in the second degree. We conclude that there was no error. We also conclude that this case does not present circumstances appropriate for the exercise of our extraordinary power under § 33E. Thus, we affirm the convictions.

The evidence presented at the second trial was essentially the same as that which was admitted at the first trial. This evidence, together with the appropriate inferences which a jury could draw from it, was stated in great detail in *Cordle I, supra* at 734-738, and we need not repeat those details here. Instead, we shall state only the differences in the evidence between the first and second trials to the extent those differences relate to the defendant's claims of error.

1. *The defendant's motions for required findings of not guilty.* The defendant filed two separate motions for required findings of not guilty on the charges against her: one at the close of the Commonwealth's case-in-chief, another at the close of all the evidence. We assess the sufficiency of the Commonwealth's evidence at the time of each motion. See *Commonwealth* v. *Walker*, 401 Mass. 338, 343 (1987); *Commonwealth* v. *Basch*, 386 Mass. 620, 622 & n.2 (1982). In each instance, we consider all the evidence, viewing it in the light most favorable to the Commonwealth. *Common-*

---

[1]The judge in the first trial died in 1987; the retrial was conducted before another judge in the Superior Court.

wealth v. *Walker, supra. Commonwealth* v. *Basch, supra* at 622. See *Cordle I, supra* at 734.

As we have noted, the evidence presented by the Commonwealth in its case-in-chief was essentially the same evidence that this court held sufficient to withstand a motion for a required finding of not guilty in the first trial. The Commonwealth presented the same evidence of the defendant's interest in, and harassment of, Ralph Anderson; the same evidence of the defendant's presence in Sandwich in the early morning of June 15, 1985; the same evidence of the similarity between the mode by which Anderson's cottage was entered on the morning of the murders and the mode by which the defendant broke into the cottage on May 28, 1985; and the same evidence that the defendant displayed consciousness of guilt by denying that she had been in Sandwich on the morning of the murders. In addition, the Commonwealth introduced new evidence that, following the May 28 incident, the defendant threatened to kill "Ralph and his whores." The judge properly concluded that the evidence on the record before him was sufficient to send the indictments to the jury.[2]

The defendant presented additional evidence that was not introduced at the first trial. This additional evidence included uncontroverted testimony that Anderson visited the defendant's house on several occasions in March and April, 1985, and that during this period he sometimes sat outside the defendant's house for hours waiting in his automobile for the defendant to come home. In addition, the defendant also presented evidence that on May 4, 1985, the defendant spent

---

[2]In *Cordle I*, the quorum of the court deciding the appeal was the same as the present quorum. Four Justices joined in the court's opinion, but the author of this opinion dissented on the ground that *Commonwealth* v. *Mazza*, 399 Mass. 395 (1987), compelled the conclusion that the Commonwealth had not presented sufficient evidence to withstand a motion for a required finding of not guilty. *Cordle I, supra* at 745-749 (Liacos, J., dissenting). In the present opinion, however, the author accedes to the precedent established in *Cordle I* regarding the sufficiency of the evidence; additionally, the author concludes that the additional evidence of a specific threat to kill the victims is more significant than the threats relied on by the court in *Cordle I*.

the evening dining and dancing with Anderson and another couple and that this group then went to Anderson's cottage in Sandwich where they socialized while Anderson and the defendant played the organ. Finally, there was also evidence that on March 4, 1985, Anderson sent the defendant a postcard from Florida which he signed with an "X" and an "O." The defendant contends that this additional evidence undercut the prosecution's evidence that the defendant had harassed Anderson in the months preceding his murder and that consequently she was entitled to directed verdicts in her favor. We disagree.

We have stated the standard of review of a denial of a motion for a required finding of not guilty: We consider the evidence in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The judge properly denied the motions. The additional evidence presented by the defendant, if believed, tended only to show that Anderson had not completely ended his relationship with the defendant. The jury still could have concluded that the defendant was unable to cope with Anderson's relationships with other women and that it was this inability that led her to Anderson's cottage on the morning of June 15. Indeed, the break-in on May 28, which occurred after each of the events relied on by the defendant, confirms that the defendant continued to harass Anderson just two weeks prior to his death. This evidence of the defendant's history of harassing Anderson, combined with the additional evidence of the defendant's presence in Sandwich on the night of the murders, her consciousness of guilt, and the distinctive means by which she entered the cottage, was sufficient to submit to the jury.[3]

---

[3]We note that, in addition to the evidence of Anderson's continued contact with the defendant in the spring of 1985, the defendant also adduced evidence regarding the forensic investigation of the case. Specifically, the defendant elicited testimony that a forensic examination of her automobile and clothing revealed no traces of blood or gunshot residue. As discussed

2. *The judge's refusal to instruct the jury on the Commonwealth's failure to conduct certain forensic tests.* During the course of trial, defense counsel adduced evidence that the Commonwealth had not tested the defendant's hands for the presence of blood or gunshot residue following her arrest. At the close of the evidence, defense counsel requested a jury instruction to the effect that it was permissible for the jury to infer that, if the tests had been conducted on the defendant's hands, they would have resulted in evidence favorable to the defendant.[4] The judge refused to give the requested instruction, allowed the defendant's counsel to argue the point to the jury, and gave a general instruction on inferences as set out in the margin.[5] The defendant claims that the judge's refusal to give the requested instruction was error. She con-

---

*infra*, the absence of forensic evidence was not particularly exculpatory, as there was no evidence to suggest that the clothes tested by the Commonwealth were in fact the clothes the defendant was wearing on the night of the murders, nor was there any evidence to suggest that the perpetrator of the murders necessarily came in contact with the blood of the victims.

[4]The defendant's requested instruction number 15 read in part:

"The fact that certain tests were not conducted by the police . . . may raise a reasonable doubt in the minds of jurors. . . . If you determine that it would be expected, in the normal course of events, to perform such tests, . . . then you may draw a negative inference from such failure. In other words, you may infer that such tests, if properly conducted, would have resulted in evidence favorable to the defendant."

The defendant's requested instruction number 13 read:

"In your deliberations in this case, you may consider the evidence that certain tests were not conducted or certain police procedures were not followed in the investigation of this case. You may give this whatever weight you feel it is entitled to or draw whatever inferences you feel are justified. It is for you to determine whether the inadequacies if any, of the police investigation deprived the defendant of evidence which would be supportive of her position."

[5]The judge instructed the jury as follows:

"There are two ground rules that you must follow with reference to circumstantial evidence.

"First of all, you may draw inferences and conclusions only from facts which have been proved to you beyond a reasonable doubt in the trial of the case.

"Each fact which is necessary to the conclusion must be distinctly and independently proved by competent evidence.

"The second rule is that any inferences or conclusions which you draw

tends further that the error was exacerbated by the judge's general instruction regarding inferences, which she claims precluded the jury from drawing the inference she sought. There was no error.

The decision whether to instruct a jury regarding the inferences that may be drawn from the failure of the police to conduct forensic tests lies within the discretion of the trial judge. See *Commonwealth* v. *Brown*, 411 Mass. 115, 119 (1991); *Commonwealth* v. *Andrews*, 403 Mass. 441, 463 (1988). The failure of the police to conduct certain tests is a permissible ground on which to build a defense. See *Commonwealth* v. *Benoit*, 382 Mass. 210, 221 (1981); *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980). It is true, however, that "[a] judge need not give instructions on every subsidiary fact and possible inference." *Commonwealth* v. *Phong Thu Ly*, 19 Mass. App. Ct. 901, 902 (1984). "If there were inferences favorable to the defendant to be drawn based on deficiencies in the police investigation, it was the job of the defense to urge them to the jury."[6] *Commonwealth* v. *Porcher*, 26 Mass. App. Ct. 517, 520-521 (1988).

In the present case, the defendant wished the jury to infer that, at the time of her arrest, there were no traces of blood or gunshot residue on the defendant's hands. This was a subsidiary issue at trial, as there was no evidence to suggest that the perpetrator of the crimes necessarily came into contact with the blood of the victims. Moreover, there was no evidence to suggest that the Commonwealth's failure to test the defendant's hands was unreasonable or that it was calculated to deprive the defendant of potentially exculpatory evidence. In light of the fact that the defendant was not arrested until

---

must, of course, be reasonable and natural based on your common sense and the experience of your life.

"In a chain of circumstantial evidence, it is not required that each one of your inferences and conclusions be inevitable or inescapable, but it is required that each one of them be reasonable; and that they all be consistent with one another; and that together, they establish the Defendant's guilt beyond a reasonable doubt, as I defined that to you."

[6]This the defendant was allowed to do.

nearly fourteen hours after the murders, and in light of the evidence that the defendant's automobile and some of her clothing had been tested and that the results of these tests were negative, the judge was not required to focus on the absence of a test of the defendant's hands. That the judge chose not to comment specifically on this evidence in his charge to the jury in no manner undermined the defense and was not an abuse of discretion.

To the extent that the defendant argues that the judge's general instruction regarding inferences precluded the jury from drawing the inference urged by counsel, we note first that defense counsel did not object to the judge's instruction at trial. In the absence of a proper objection, our review under § 33E is limited to whether the charge created a substantial likelihood of a miscarriage of justice. *Commonwealth v. Anderson*, 396 Mass. 306, 313 (1985). In any event, even if the defendant were entitled to full review of her claim, we would not conclude that the judge's instruction precluded the jury from drawing the inference sought by the defendant. Compare *Commonwealth v. Bowden*, *supra* at 485-486. The judge's instruction that "you may draw inferences and conclusions only from facts which have been proved to you beyond a reasonable doubt" did not, as the defendant contends, create an "impossible burden" for the defendant. Indeed, the fact on which the defendant sought to base the inference — the failure of the police to conduct the tests — was not disputed. Likewise, the judge's further instruction that "any inferences or conclusions which you draw must, of course, be reasonable and natural based on your common sense and the experience of your life" was a correct statement of law, see *Commonwealth v. Anderson*, *supra* at 311; *Commonwealth v. Lanoue*, 392 Mass. 583, 589-590 (1984), *S.C.*, 400 Mass. 1007 (1987), and 409 Mass. 1 (1990); *Commonwealth v. Rojas*, 388 Mass. 626, 630 (1983), and did not preclude the jury from drawing the inference urged by counsel.

3. *The judge's refusal to sequester the jury at the outset of the trial.* Prior to jury empanelment, the defendant filed a motion to sequester the jury. The judge initially denied this

motion, but, on the fourth day of trial, the judge did seques-
ter the jury after two jurors were dismissed because they had
inadvertently received outside information about the case.
The defendant now contends that the judge's refusal to se-
quester the jury at the outset of the trial was error and that
this error deprived her of a trial by an impartial jury. We
find no merit in the defendant's contentions.

The decision whether to sequester a jury lies within the
sound discretion of the trial judge. See *Commonwealth* v. *Al-
len*, 379 Mass. 564, 581 (1980); *Commonwealth* v. *Mar-
shall*, 373 Mass. 65, 68 (1977); Mass. R. Crim. P. 20 (e),
378 Mass. 889 (1979). The record in the present case reveals
that the judge properly exercised his discretion in initially re-
fusing to sequester the jury. Before ruling on the defendant's
motion to sequester, the judge held a lobby conference to as-
certain the extent of the media coverage that had been de-
voted to the trial. During this conference, the judge also
questioned members of the news media to determine the na-
ture and extent of the coverage they expected to give the
trial as it progressed. The judge then returned to the court-
room and questioned the potential jurors regarding their
knowledge about the case. After a panel of sixteen jurors had
been selected, the judge then ruled that, rather than seques-
tering the jury, he instead would instruct the jurors to avoid
any exposure to the news media during the course of the trial
and to refrain from discussing the case with anyone. These
rulings were a proper exercise of the judge's discretion. Addi-
tionally, during the course of the trial, the judge questioned
the jury at the beginning of each trial day to determine
whether any juror had been exposed to extraneous influences,
and, at the end of each trial day, cautioned the jurors to
avoid exposure to the media and to refrain from discussing
the case. We shall not fault a trial judge for choosing to fol-
low the procedures approved by this court. See *Common-
wealth* v. *Palmariello*, 392 Mass. 126, 141-142 (1984).
Thus, we reject the defendant's contention that the judge's
refusal to sequester the jury from the outset denied her a
trial by an impartial jury. The defendant points to no evi-

Commonwealth *v.* Cordle.

dence that any of the deliberating jurors were exposed to outside information about the case, nor do we find any such evidence in our review of the record.[7] The burden is on the defendant to demonstrate that the jurors were exposed to extraneous information and, in the absence of such evidence, the defendant's claim must fail. See *Commonwealth* v. *Marshall, supra* at 69.

4. *Relief under G. L. c. 278, § 33E.* Pursuant to our duty under G. L. c. 278, § 33E, we have reviewed the entire record on the law and the evidence. We see no justification for ordering a new trial or reducing the verdicts to a lesser degree of murder.

*Judgments affirmed.*

[7]The two jurors who were dismissed after they notified the judge that they had inadvertently received outside information about the case had both indicated that they had not discussed the outside information with other members of the jury. A third juror who had inadvertently learned that there had been prior proceedings in the case, but who had not learned the outcome of those proceedings, was retained on the panel after he indicated that the information would not affect his judgment. Defense counsel did not object to this juror's remaining on the panel, and the judge specifically instructed the juror not to convey the information to other jurors. This juror ultimately became the alternate juror and therefore did not participate in the deliberations. One juror had been excused on the fifth day of trial for medical reasons.