COMMONWEALTH *vs.* DARNELL MOORE.

No. 99-P-992.

Suffolk. October 10, 2000. - January 22, 2001.

Present: PERRETTA, GILLERMAN, & PORADA, JJ.

*Practice, Criminal,* Required finding. *Breaking and Entering. Evidence,* Intent. *Constitutional Law,* Confrontation of witnesses. *Witness,* Cross-examination.

Evidence presented at a criminal trial supported the jury's findings that the defendant entered the victim's house, and that he did so with the intent to commit a felony, viz., assault and battery by means of a dangerous weapon. [732-734]

A trial court judge did not err in denying a criminal defendant's motion for a required finding of not guilty on a charge alleging use of a motor vehicle without authority, G. L. c. 90, § 24, where the evidence presented at trial was sufficient for a jury to conclude that the defendant did not have authorization to use the vehicle and that he knew that any use of the vehicle was unauthorized. [734-735]

At a criminal trial, the judge committed reversible error in denying the defendant reasonable cross-examination of the victim for the purpose of showing bias and prejudice. [735-737]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on October 30, 1997.

The case was tried before *Joseph M. Walker, III,* J.

*David Weingarten* for the defendant.

*Dean A. Mazzone,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. A jury in the District Court convicted the defendant of breaking and entering in the daytime with intent to commit a felony, G. L. c. 266, § 18, and unauthorized use of a motor vehicle, G. L. c. 90, § 24, but found him not guilty of assault and battery.[1] The defendant has appealed from the denial

---

[1]The court allowed the defendant's motion for a required finding of not guilty on the charge of assault and battery with a dangerous weapon.

of his motions for required findings of not guilty on the break-ing and entering charge and on the unauthorized use charge. He also appeals from the judge's refusal to allow the defendant to cross-examine the victim (Jones) regarding criminal charges pending against her, and refusal to allow evidence of an out-of-court statement by Jones that she had lent her vehicle to the defendant.

1. *The denial of the motion for a required finding on the breaking and entering count.* We review the defendant's mo-tions for a required finding of not guilty under the familiar *Lati-more* standard. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). *Commonwealth* v. *Jones*, 432 Mass. 623, 625 (2000). The defendant filed two separate motions for a required finding of not guilty, one at the close of the Commonwealth's case, and the second at the close of all the evidence. We must assess the sufficiency of the Commonwealth's evidence at the time of each motion. *Commonwealth* v. *Cordle*, 412 Mass. 172, 173 (1992). At all times, as required by *Latimore*, we state the facts in the light most favorable to the Commonwealth. We also consider undisputed evidence which fills in useful detail. *Com-monwealth* v. *Camerano*, 42 Mass. App. Ct. 363, 364 (1997).

We summarize the Commonwealth's evidence. On October 25, 1997, Amanda Jones returned home from her job at 8:00 A.M. Between 9:00 and 10:00 A.M., Jones received a telephone call. The caller, whom Jones recognized as the defendant Dar-nell Moore, taunted her with words to the effect that she was not tough and that she should have fun buying new tires and windows for her car. Jones and the defendant had been romanti-cally involved with one another but she had broken off their relationship in or about August, 1997. Jones characterized their relationship as "rough."

Jones, having just worked the night shift, activated the house alarm and went upstairs to go to sleep. Approximately ten minutes later, Jones heard a shaking in her key lock on the front door. Upon hearing the noise in the key lock, Jones ran downstairs to the front door. As she arrived downstairs, the alarm sounded. The front door was partly open; the defendant was standing in the doorway. There was an exchange of words, following which Jones ducked down under the defendant's arm, and ran past him across the porch to the screen door. The defendant gave chase, grabbed Jones by the neck, and pulled her down. The defendant kicked Jones in the face, saying,

"Bitch I'm going to show you who I am. I'm going to show you who I am." After two to three minutes of struggling, Jones managed to escape; she ran off the porch and went to her neighbor's house. Her lip was "busted" from the kick she had received from the defendant.

Jones's neighbor, Anne Bennett, saw Jones as she was brought into the Bennett house by Anne's husband. Anne saw Jones crying hysterically and holding her mouth. She saw blood on Jones's mouth. Anne saw that Jones "was very hysterical." Jones kept on saying, "He's going to kill me. He's going to kill me."

Anne then heard Jones's car start and saw the defendant back the car out of Jones's driveway "very fast." He left the area at a "fast" rate of speed. By that time, Bennett had called the police, who arrived on the scene in minutes.

The defendant was convicted of breaking and entering in the daytime with intent to commit a felony, G. L. c. 266, § 18.[2] The defendant contends that there was no evidence that he "entered" Jones's house. As noted above, Jones heard the shaking of the lock on the front door and ran downstairs. The alarm went off, and she saw the defendant, who had opened the front door with his key, standing in the doorway. She "ducked" under the defendant's arm in an attempt to flee. The jury could reasonably infer that Jones's front door opened inwardly (as is commonly the case), and that, in opening Jones's door, the defendant's arm entered the house. This provided sufficient evidence to support the finding of an entering. *Commonwealth* v. *Lewis*, 346 Mass. 373, 377 (1963), cert. denied, 376 U.S. 933 (1964) ("We are of opinion that the jury could fairly have inferred that in the course of his opening the door some portion of the defendant's hand or arm came within the house. That was enough to constitute an entry").[3]

The defendant argues that there was no evidence to support a finding of an intent to commit a felony. "The 'intent to commit a felony' is an essential element of the crime proscribed by

---

[2]Chapter 266, § 18, provides, in pertinent part: "Whoever . . . breaks and enters in the day time a building . . . with intent to commit a felony, no person lawfully therein being put in fear, shall be punished . . . ."

[3]The defendant makes no argument that there was insufficient evidence for the jury to find that there was a "breaking." See, however, *Commonwealth* v. *Labare*, 11 Mass. App. Ct. 370, 374, 377 (1981) (opening of a locked door with a key is a breaking).

G. L. c. 266, § 18, breaking and entering in the daytime with intent to commit a felony." *Commonwealth* v. *Walter*, 40 Mass. App. Ct. 907, 909 (1996).

The only felony that the judge defined for the jury was assault and battery by means of a dangerous weapon. Cf. *ibid.* (finding error where the trial judge did not instruct the jury on the meaning of felony). The trial judge had granted the defendant's motion for a required finding of not guilty on the charge of assault and battery by means of a dangerous weapon. See note 1, *supra*. However, the allowance of the motion did not preclude the denial of the defendant's motion for a required finding on the breaking and entering charge. The ruling that there was insufficient evidence that the defendant assaulted and battered Jones with a dangerous weapon did not preclude a finding that he had the requisite intent to do so. In *Commonwealth* v. *Lowe*, 21 Mass. App. Ct. 934 (1985), the jury found the defendant guilty of breaking and entering with intent to commit a felony, but acquitted on the charge of assault and battery by means of a dangerous weapon. The defendant argued that the not guilty finding logically negated the existence of an element necessary to convict on the breaking and entering charge, namely, intent to commit a felony. We rejected the argument. We wrote, "Correctly analyzed, however, the claimed inconsistency here is factual rather than logical, because one may have the intent to commit a felony at the time he breaks and enters and, for whatever reason, not commit the felony or . . . commit a different crime" (citation omitted). *Id.* at 935. Compare *Commonwealth* v. *White*, 11 Mass. App. Ct. 929, 930 (1981) (noting that evidence of an assault with intent to rape was "merely strong and additional, but not required, proof of the specific requisite felonious intent harbored by the defendant when he broke into the victim's room").

While "[t]he requisite felonious intent may be inferred from the actual commission of the felonious act," *Commonwealth* v. *Perron*, 11 Mass. App. Ct. 915, 917 (1981), it can also be inferred "from the circumstances attending the act, and from the conduct and declarations of the defendant." *Ibid.*, quoting from *Commonwealth* v. *Shedd*, 140 Mass. 451, 453 (1886). See *Commonwealth* v. *DiMonte*, 427 Mass. 233, 243 (1998) (where evidence of intent to commit an assault and battery is required, "[e]vidence of a hostile relationship between spouses is probative of a defendant's motive in an act of violence against his spouse").

From the evidence presented, a jury could have inferred that, at the time the defendant broke and entered Jones's house, he had the requisite intent to commit assault and battery by means of a dangerous weapon. Jones and the defendant had a "rough" relationship, the defendant had called and threatened Jones with physical violence, and Jones was physically injured during their confrontation. Moreover, the jury could reasonably infer the defendant's malevolent intent (i.e., the intent to assault and batter Jones with a dangerous weapon) from Jones's bloody mouth (seen by her neighbor) after the defendant kicked her several times in the face with sufficient violence to make Jones believe, even if hysterical, that the defendant intended to kill her. See *Commonwealth* v. *Fernandez*, 43 Mass. App. Ct. 313, 315 (1997), quoting from *Commonwealth* v. *Marrero*, 19 Mass. App. Ct. 921, 922 (1984) ("Footwear, such as a shoe, when used to kick, can be a dangerous weapon").

The Commonwealth's evidence did not deteriorate at the close of all the evidence. The defendant testified that he never entered Jones's house, never touched her, and never made any threatening statements, but the jury were not required to believe his testimony.

There was no error in the denial of the defendant's motion for a required finding of not guilty either at the close of the Commonwealth's case or at the close of all the evidence. See *Commonwealth* v. *Cordle*, 412 Mass. at 173, 175.

2. *The denial of the motion for a required finding on the use without authority charge.* The defendant argues that the trial judge erred in denying his motion for a required finding of not guilty on the charge of use of a motor vehicle without authority, G. L. c. 90, § 24.[4] "The elements of the offense of use without authority are (1) use; (2) of a motor vehicle; (3) in a public way; (4) without authority; (5) knowing that such use is unauthorized." *Commonwealth* v. *Giannino*, 371 Mass. 700, 702 (1977). The defendant contends that there was insufficient evidence for a jury to conclude that he did not have authorization to use the vehicle or that he knew that any use was unauthorized by Jones. We disagree.

Jones owned the vehicle in which the defendant left the scene. The defendant, who appeared at Jones's home uninvited,

---

[4] Chapter 90, § 24(2)(*a*), as amended by St. 1975, c. 156, § 1, provides, in pertinent part: "and whoever uses a motor vehicle without authority knowing that such use is unauthorized shall, for the first offense be punished . . . ."

acknowledged that he did not then have a key to Jones's vehicle. The jury could infer from the circumstances that the defendant, who did not have a key to the car, and who had just been involved in a violent confrontation with Jones, did not have Jones's authority to use her vehicle.

"A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at the trial. . . . The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988). In addition to appearing at Jones's house uninvited, knowing that he did not have a key, and knowing he did not own the car, the defendant, immediately after Jones escaped his grasp and fled to her next-door neighbor, sped off with Jones's car. From this behavior, too, the jury could reasonably infer that the defendant knew he did not have authority to use Jones's motor vehicle. See *Commonwealth* v. *Stewart*, 30 Mass. App. Ct. 569, 578 (Kass, J., dissenting), *S.C.*, 411 Mass. 345 (1991).

3. *Evidentiary issues.* The defendant contends, and the Commonwealth concedes, that the trial judge committed reversible error by failing to permit cross-examination of Jones concerning her pending indictment in Suffolk Superior Court.

Despite the Commonwealth's confession of error, this court has a duty to examine the issue. See *Commonwealth* v. *Clark*, 23 Mass. App. Ct. 375, 379 (1987). Our review of the testimony brings us to conclude that the error was not harmless. The apparent strength of the Commonwealth's case was substantially diminished by the cross-examination of James Lydon, the Boston police officer who arrived at the Bennett's house about six or seven minutes after the call came in from Anne Bennett's husband.

On direct examination Officer Lydon testified that Jones "appeared very excited . . . in an hysterical state and . . . on the verge of tears." When asked for his observations about her injuries, Officer Lydon replied that he recalled "something about her face, but I don't exactly recall what it is."

On cross-examination Officer Lydon agreed that it was his usual practice in domestic violence cases to record in his report hysterical behavior, any injuries, whether medical personnel were needed, and any physical corroboration of the alleged

victim's account of events. Thereupon Officer Lydon acknowledged that, in his written report on the Jones incident, there was no mention that Jones was hysterical, no mention that Jones was crying or on the verge of crying, no mention that Officer Lydon noticed any injury on Jones, no mention that he saw blood anywhere, no mention what he saw scratches anywhere on Jones, no mention that he saw any marks on Jones, and no mention that there was anything unusual in the appearance of Jones's face. Lydon's testimony on cross-examination, which was consistent with Jones's earlier testimony that she did not call an ambulance and she did not go to a hospital after the incident, likely raised doubts as to the credibility of Jones as well as the credibility of her neighbor Anne Bennett. In that context, evidence of the criminal charges pending against Jones — armed assault with intent to murder the defendant in the case at bar, arising out of an incident occurring an hour or so after the confrontation in this case — could effectively reveal Jones's bias. The defendant put it this way in his argument to the judge: "[Jones] has a lot to gain in her case if he is convicted of doing something to her forty-five minutes before he alleges that [s]he did something, in effect, much more serious to him."

In his brief to this court the defendant refers to the well-established doctrine regarding the constitutional rights of confrontation and cross-examination. See *Commonwealth* v. *Tanso*, 411 Mass. 640, 650, cert. denied, 505 U.S. 1221 (1992) ("[T]he decisions of [the United States Supreme Court] and other courts throughout the years have constantly emphasized the necessity for cross-examination as a protection for defendants in criminal cases. . . . [T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal"). See also *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. 49, 52 (1992), quoting from *Commonwealth* v. *Haywood*, 377 Mass. 755, 760 (1979), and *Commonwealth* v. *Marcellino*, 271 Mass. 325, 327 (1930) ("A defendant has the *right* to bring to the jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate' ").

Since the credibility of Jones was of critical importance in this case, we cannot say that the excluded evidence was harmless error. See *Commonwealth* v. *Dean*, 17 Mass. App. Ct. 943

(1983) ("It is settled, of course, by a legion of cases that reasonable cross-examination with respect to bias is matter of right, not discretion"). Accordingly, we agree with the defendant and the Commonwealth that the trial judge committed reversible error in denying the defendant reasonable cross-examination of Jones for the purpose of showing bias and prejudice. See *Commonwealth* v. *LaVelle*, 414 Mass. 146, 153 (1993).

The defendant also claims error in the judge's rejection of the defendant's offer of proof that his brother would testify as to a conversation with Jones in which Jones said, among other things, that she had lent her vehicle to the defendant and wanted it back. This ruling was error. On any retrial, the proffered evidence may be admitted solely for the purpose of challenging the credibility of Jones. See *Commonwealth* v. *McGowan*, 400 Mass. 385, 390 (1987); *Commonwealth* v. *Donnelly*, 33 Mass. App. Ct. 189, 197 (1992).

Although we affirm the denial of the defendant's motions for required findings of not guilty, because of the evidentiary errors discussed above we reverse the judgments and set aside the verdicts on the charges of breaking and entering with intent to commit a felony and unauthorized use of a motor vehicle.

*So ordered.*