## Commonwealth *vs.* Henry R. Basch.

Norfolk.  February 3, 1982. — June 28, 1982.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & O'Connor, JJ.

*Homicide.  Evidence*, Impeachment of credibility, Consciousness of guilt. *Witness*, Impeachment. *Practice, Criminal*, Instructions to jury.

At the trial of a murder indictment evidence that the victim, the defendant's wife, had been killed with a gun placed close to her head while she was sleeping, that the victim was about to file for divorce when she was killed, that death occurred when the victim and the defendant were alone except for their five-year old daughter, and that the defendant staged a burglary of his home and made false statements to the police warranted a finding that the defendant was guilty of murder in the first degree.  [622]

At the trial of a murder indictment during which a medical examiner testified that the killing had occurred between 5 a.m. and 7 a.m. without leaving open the possibility that it could have occurred later, it was reversible error to exclude a preliminary report by the medical examiner which left open the possibility that death had occurred as late as 9 a.m. and which was offered by the defendant as a prior inconsistent statement.  [623-624]

Certain statements made by a defendant charged with the murder of his wife which taken together with other evidence at his trial suggested that the defendant had staged a burglary of his home in an attempt to keep suspicion from himself were properly admitted as evidence of consciousness of guilt.  [624-625]

Where the charge at a murder trial clearly and concisely conveyed to the jury their duty to find guilt beyond a reasonable doubt, it was unnecessary for the judge to instruct the jury in accordance with the defendant's request that "[w]here circumstantial evidence tends equally to sustain either of two inconsistent propositions, the guilt or innocence of the defendant, neither can be said to be established."  [625-626]

Indictment found and returned in the Superior Court Department on April 24, 1979.

The case was tried before *Pierce*, J.

*Ellen Y. Suni* for the defendant.

*Charles J. Hely*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant appeals from a conviction, following a jury trial, of murder in the first degree. He seeks relief under G. L. c. 278, § 33E, and in addition, claims the trial judge erred in (1) denying the defendant's motions for required findings of not guilty; (2) excluding the medical examiner's preliminary report; (3) admitting evidence on consciousness of guilt and instructing on this evidence; and (4) failing to give a requested instruction on circumstantial proof.[1] We reverse.

We recite facts that the jury could have found. The defendant's wife, Sandra Basch, died of a single gunshot wound to the head while she was sleeping. There was a bullet hole just behind the left ear and a track forward to the right side of the head where the bullet was found. A minimal flash burn appeared at the bullet hole, caused by heat or powder burning from the muzzle of a gun. Sandra Basch's body was found in bed in the couple's home on October 10, 1977. She had died between 5 A.M. and 7 A.M. that day.

The defendant and the couple's only child, a five-year-old daughter, left the home some time that morning. Their first stop was in Sharon center where they arrived between 7:45 A.M. and 8:15 A.M. The defendant did not return home until around 4 P.M. that day. At that time, he did not enter his own house, but instead used a neighbor's telephone to call the police. The defendant told the police on that day, and thereafter, that he had seen a man running through his yard carrying a suitcase that he thought contained his coin collection.

The Baschs had been having marital problems for years, and, at the time of her death, Sandra Basch intended to seek a divorce. Custody of the daughter had been a particularly divisive issue.

---

[1] The defendant's counsel on appeal was not his trial counsel.

1. *Motions for required findings of not guilty.* At the close of the Commonwealth's case and again at the close of all the evidence, the defendant moved for required findings of not guilty as to murder in both the first and second degree. He claims the judge's denial of these motions was error.

Applying the standard of *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-678 (1979), we must determine whether the evidence, read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt. *Commonwealth* v. *Toney,* 385 Mass. 575, 582 (1982). We consider the state of the evidence both at the close of the Commonwealth's case, and at the close of all the evidence.[2]

At both times, there was sufficient evidence to warrant a verdict of guilty of murder in the first degree. The evidence tended to show the following facts. The defendant's wife was about to file for divorce. He was threatened with the loss of his daughter and his home. Death occurred when the defendant and the victim were alone except for their five-year-old daughter. The defendant staged a break-in and made false statements to the police to conceal his guilt. The victim was killed with a gun, placed close to her head, from behind, while she was sleeping.

The evidence was sufficient to allow the jury to infer that the defendant killed his wife after reflection. Deliberate premeditation would have been present even if the killing followed reflection by only a few seconds. *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978). *Commonwealth* v. *Tucker,* 189 Mass. 457, 494-495 (1905).[3]

---

[2] We consider the evidence at the close of all the evidence to determine whether the Commonwealth's position as to proof had deteriorated since it had closed its case. See *Commonwealth* v. *Amazeen,* 375 Mass. 73, 80 n.5 (1978); *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 n.1 (1976). The Commonwealth's position as to proof did not deteriorate.

[3] The Commonwealth would have us consider, as probative on premeditation, the staged break-in and false statements to the police. It suggests that these were not a hasty cover-up, but rather were part of a preconceived plan. There was no evidence, and thus a jury could not find, that

2. *Medical examiner's report.* The medical examiner testified for the Commonwealth that the time of death was between 5 A.M. and 7 A.M. His preliminary report left open the possibility that the death occurred as late as 9 A.M. At the close of the defendant's case in chief, which was one week after the testimony of the medical examiner, the defendant offered this report in evidence as a prior inconsistent statement. The judge excluded it on the ground that it was hearsay, and the defendant claims error.

An out-of-court statement introduced to impeach a witness, and not to prove the truth of the matter asserted in the statement, is not hearsay. The document should not have been excluded as hearsay.

The Commonwealth offers a second ground for excluding the report. It notes that order of proof rests within the sound discretion of the trial judge and urges that this power allowed the judge to exclude the document because, isolated as it was from the medical examiner's testimony, the report might be taken as substantive evidence despite the judge's cautionary instructions.

A party has a right to impeach an adverse witness's testimony by means of prior inconsistent statements, and though a judge may limit that impeachment when the testimony concerns collateral issues in the case, he has no discretion to do so when the issue is material. *Assessors of Pittsfield* v. *W.T. Grant Co.*, 329 Mass. 359, 360 (1952). Here, the time of death was critical to the case since the defendant had left his house by sometime between 7:45 A.M. and 8:15 A.M. Although the order of proof generally rests within the trial judge's discretion, *Commonwealth* v. *Randall*, 260 Mass. 303, 310 (1927); *Commonwealth* v. *Dower*, 4 Allen 297, 299 (1862), this does not mean that the judge can use this discretion effectively to preclude a party from exercising his

the break-in was staged, or the false story concocted, before the killing. Therefore, this conduct is not relevant to premeditation, and we have not considered it in concluding that there was sufficient evidence for the jury to find premeditation. See *Commonwealth* v. *Blaikie*, 375 Mass. 601, 605 (1978).

right to impeach. The judge's ruling effectively precluded the defendant from using the document. This ruling was error.

While we hold that the medical examiner's report was improperly excluded, we note that the Commonwealth could have mitigated any perceived unfairness by recalling the medical examiner to explain any inconsistency between his testimony and his report. See *Gould* v. *Norfolk Lead Co.*, 9 Cush. 338, 347 (1852) (dictum); *Commonwealth* v. *Smith*, 329 Mass. 477, 480-481 (1952) (quoting *Gould* with approval). See generally P.J. Liacos, Massachusetts Evidence 165-166 (5th ed. 1981); K.B. Hughes, Evidence § 244 (1961); 3A J. Wigmore, Evidence § 1044 (Chadbourn rev. 1970).

Time, and particularly the medical examiner's assessment of the time of the murder, were central to the Commonwealth's case. The medical examiner testified that the killing occurred between 5 A.M. and 7 A.M., without leaving open the possibility it could have occurred later. His report cited the same range of time, but expressly left open the possibility that the killing occurred as late as 9 A.M. No other witnesses testified that the killing necessarily occurred before 7 A.M. Since the defendant left his house around 8 A.M., use of the report was critical to discrediting the Commonwealth's theory that the defendant, with the exception of his five-year-old daughter, had an exclusive opportunity to kill his wife. We cannot conclude that, had the report been admitted, it would not have created a reasonable doubt in the minds of the jury. Therefore, we reverse.

We briefly consider other issues that are likely to recur on retrial.

3. *Consciousness of guilt.* The defendant argues that evidence of his statements to the police regarding burglary of his coins should not have been admitted. A defendant's intentionally false statements about material particulars show consciousness of guilt and are admissible. *Commonwealth* v. *Smith*, 368 Mass. 126, 129 (1975). *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 52 (1975). *Commonwealth* v. *Connors*, 345 Mass. 102, 105-106 (1962). *Commonwealth*

v. *Eppich*, 342 Mass. 487, 492 (1961). *Commonwealth* v. *Bonomi*, 335 Mass. 327, 348 (1957). Evidence of conscious-ness of guilt together with other evidence may support a determination of guilt. *Commonwealth* v. *Montecalvo, supra* at 52, and cases cited therein. There was evidence that before he could have viewed the rear of his house on the afternoon of October 10, the defendant told the police that the rear door of the house was open and that he had left it closed that morning. The police found the door open. The jury could question how the defendant knew that the door was open unless he had left it that way in the morning. In addition, there was evidence that the door had not been jimmied from the outside, although there were scratch marks on the rear door near the lock, pry marks on the in-side of the door, and paint chips on the floor near the door inside the house. Taken together, this evidence suggests that the defendant faked a break-in. From this evidence, and without assuming the defendant's guilt, see *Common-wealth* v. *Trefethen*, 157 Mass. 180, 199 (1892), a jury could reasonably conclude beyond a reasonable doubt that the defendant's statements were false and that he had a guilty conscience. The statements were properly admitted.

The judge instructed that the jury must find that the de-fendant's statements were "knowingly made" and were false. The defendant argues this instruction failed to inform the jury that they must find that the defendant knew his state-ments were false. The jury could only have understood the instruction to mean that they could find consciousness of guilt only if they found that the defendant's statements were known by the defendant to be false. There was no objec-tion to the instruction, so our review would only be for a substantial likelihood of a miscarriage of justice. *Common-wealth* v. *Tavares*, 385 Mass. 140, 147-148 (1982). There was none.

4. *Requested instruction*. The defendant asked the judge to charge that "[w]here circumstantial evidence tends equally to sustain either of two inconsistent propositions, the guilt or innocence of the defendant, neither can be said

to be established by legitimate proof." At the end of the charge, the defendant renewed his request. He claims that without this language, the jury were given an incomplete picture of their duty with regard to the circumstantial evidence.

The charge clearly and concisely conveyed to the jury their duty to find guilt beyond a reasonable doubt. This was enough to inform the jury that, if guilt and innocence were established as equally likely, the defendant must go free. See *Commonwealth* v. *Rhoades*, 379 Mass. 810, 822 (1980).

The judgment is reversed, and the verdict set aside. The case is remanded to the Superior Court for a new trial.

*So ordered.*