COMMONWEALTH *vs.* MILTON R. WALKER.

Suffolk.  November 3, 1987. — December 17, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* New trial. *Witness,* Impeachment. *Evidence,* Prior conviction.

At a first degree murder trial the jury's finding that the defendant murdered the victim with deliberate premeditation was warranted on the state of the evidence both at the close of the Commonwealth's case [342-343] and at the close of all the evidence [343-344].

No error appeared in the denial of a criminal defendant's motion for a new trial. [344]

The judge at the trial of a first degree murder case properly exercised his discretion in allowing the prosecution to impeach the defendant with evidence of prior criminal convictions [344-346] and the record demonstrated his proper basis for so doing [346].

INDICTMENT found and returned in the Superior Court Department on December 17, 1982.

The case was tried before *Robert J. Hallisey,* J.

*Willie J. Davis* for the defendant.

*Abbe L. Ross,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant was indicted for the murder of Thomas O'Donnell, armed robbery, and unlawfully carrying a firearm. After trial in the Superior Court, the jury returned verdicts finding the defendant guilty of murder in the first degree and not guilty of the other offenses charged.

The defendant claims error in the trial judge's refusal to grant his motions, made at the close of the Commonwealth's case-in-chief and at the close of all the evidence, for a required finding of not guilty on the murder charge. Similarly, the defendant complains of the judge's denial of his motion for a new trial following the verdicts. The basis of this motion was

that the guilty verdict was against the weight of the evidence. The defendant also argues that the judge erroneously gave instructions on the law of joint enterprise.[1] The defendant further claims that the judge abused his discretion in allowing the defendant, who testified at trial, to be impeached with some of his prior criminal convictions. Finally, the defendant urges that we should exercise our power under G. L. c. 238, § 33E (1986 ed.), and reduce the verdict.

We reject the defendant's claims of error. Further, on full consideration of the record, we determine that this is not one of those rare cases where exercise of our power under § 33E to order reduction of the verdict is consonant with justice. We affirm.

1. *The Defendant's Motions for a Required Finding of Not Guilty.*

The indictment charging murder in the first degree was presented to the jury on both a deliberate premeditation and a felony-murder theory. Because the defendant was found not guilty of armed robbery, the jury must have found he killed the victim with deliberate premeditation. See note 1, *supra*. The defendant claims that there was insufficient evidence to support a finding of deliberate premeditation, and contends, therefore, that the judge's denial of his motions for a required finding of not guilty of murder in the first degree was erroneous.

As we have often stated, the "standard of review of a denial of a motion for a required finding of not guilty is 'whether the evidence received, viewed in a light most favorable to the

_____

[1] The jury found the defendant not guilty of armed robbery. Because the judge did not instruct the jury that a homicide committed during an *attempted* robbery is murder in the first degree, see G. L. c. 265, § 1 (1986 ed.), the guilty verdict they returned must have been based on a deliberate premeditation theory. The judge similarly did not charge the jury that if they found that an accomplice of the defendant killed the victim with deliberate premeditation they could find the defendant guilty as a joint venturer. The instructions on joint enterprise related only to the allegation of felony-murder. Because the jury's verdict could not have been based on a joint enterprise theory, giving instructions on joint enterprise was harmless error at most. We need not address, therefore, the defendant's contention that such instructions should not have been given.

Commonwealth, is sufficient so that the jury "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." ' . . . 'The inferences cannot be too remote but "allowable inferences need not be necessary or inescapable." ' " (Citations omitted.) *Commonwealth* v. *Anderson,* 396 Mass. 306, 311 (1985). "The evidence must be 'sufficient to satisfy a rational trier of fact of each element of the crime [in this case murder in the first degree] beyond a reasonable doubt.' " *Id.,* quoting *Commonwealth* v. *Basch,* 386 Mass. 620, 622 (1982).

The defendant's first motion for a required finding of not guilty was made at the close of the Commonwealth's case-in-chief. See Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). We review in detail the Commonwealth's evidence. The Commonwealth produced as witnesses a married couple who live near the scene of the victim's shooting in the Jamaica Plain section of Boston. The first witness testified that, at approximately 12:25 P.M. on November 2, 1982, she observed an automobile parked near her house. There were two black men in the front seat and the victim, a white man, was in the passenger side of the back seat. This witness later identified an automobile owned by the mother of the defendant's friend Daryl Diamond as the one she observed. Both witnesses described hearing noises the jury could conclude were a gunshot followed five seconds later by glass breaking. The witnesses also observed the victim stagger away from where the car had been and twice fall.[2] The first witness covered the victim with blankets and observed a knife on the ground near him. This witness also observed broken glass on the ground where the automobile had been parked. Neither witness could identify the two men who were in the front seat of the automobile, or provide any particulars on what had occurred in the automobile.

The Commonwealth produced other evidence in its case-in-chief. The parties stipulated that the defendant and Diamond

---

[2] The victim died soon thereafter of a gunshot wound to the abdomen.

took the automobile to a glass replacement shop on the afternoon of November 2, 1982, and had the passenger side window replaced. The Commonwealth also called the medical examiner who performed the autopsy of the victim's body on November 3, 1982. This witness testified that the victim died of a gunshot wound created when a bullet entered through the lower right abdomen and passed in a straight line through the body. In response to a hypothetical question, the medical examiner stated that, if a bullet took this path through a body and became embedded five inches above the bench cushion of an automobile seat, the person shot would have been "seated on the seat." He stated in response to further hypothetical questions that the same bullet path and entry into the back cushion of the rear seat would result if a gun was fired from over the top of the front seat and the victim were leaning in the rear seat. The witness also testified that there were no powder deposits on the victim or his clothing, and, therefore, his opinion was that the gun was fired from at least two feet away.

Another Commonwealth witness testified that she conversed with the defendant and Diamond in the kitchen of Diamond's mother's house at approximately 1 P.M. on November 2, 1982. She observed blood on the defendant's left sleeve and on the record albums he was carrying. When she asked who was bleeding, the defendant stated that he had shot a white man who had threatened him with a knife. The witness further testified that she saw a gun and a small bag of what looked like marihuana on the kitchen table. She stated that she flushed the bag down the toilet on Diamond's instructions. The witness finally testified that she observed, by looking out the kitchen window, the defendant "wiping" the back seat of the automobile.

The Commonwealth's final two witnesses were police officers. One testified that the defendant told him that he was never with Diamond on the day of the shooting. This witness also testified that there was a hole in the back cushion of the automobile's rear seat on the passenger side, five inches above the seat cushion. A matching hole was found in the panel separating the passenger compartment and the trunk, and a

bullet slug as well as upholstery cleaner was recovered from the trunk.

The second officer testified that the defendant told him that he (the defendant) was with Diamond and a third person in the automobile when the victim was shot. The defendant told the officer that he was in the back seat on the driver's side and the victim was next to him on the passenger's side; that Diamond was driving and the third person was next to him; and that they picked the victim up to buy drugs from him. The defendant continued by stating that the third person shot the victim when the victim attempted to escape being robbed by sitting back in the seat, pushing the front seat forward with his feet and breaking the passenger side window with a knife.

We examine the above evidence in the light most favorable to the Comonwealth, *Commonwealth* v. *Anderson, supra* at 311, for the sole purpose of determining whether the evidence was sufficient to warrant the jury's finding that the defendant murdered the victim with deliberate premeditation. See note 1, *supra*. We conclude that the evidence was sufficient. In his statement to the second police officer, the defendant admitted to being at the scene and involved in an illicit transaction during which the victim was shot. Further, the defendant's statement to the witness at Diamond's mother's house that he shot a white man who threatened him with a knife allowed the jury to conclude that the defendant, and not a third person, shot the victim. The jury were free to disregard the exculpatory portion of this statement. *Commonwealth* v. *Fluker,* 377 Mass. 123, 128 (1979). *Commonwealth* v. *Amazeen,* 375 Mass. 73, 80 & n.5 (1978). See *Commonwealth* v. *Clary,* 388 Mass. 583, 589 (1983); *Commonwealth* v. *Holiday,* 344 Mass. 126, 129 (1965).[3] The jury could infer that the defendant knew the

---

[3] The discounting of the exculpatory portion of this statement is supported by the medical examiner's responses to hypothetical questions, and the defendant's statement to the second police officer. This testimony tends to indicate that the victim was sitting back in his seat and not leaning forward in a menacing position when he was shot. The lack of powder burns on the victim also indicates that he was probably too far away to threaten immediately whoever shot him.

gun was in the automobile, or that the defendant otherwise had procured the weapon. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 678 (1979). The subsequent use of the gun at close range would support a jury finding of deliberate premeditation. See *Commonwealth* v. *Stewart,* 398 Mass. 535, 541 (1986).[4] In sum, "the proof [at the close of the Commonwealth's case] established circumstances from which the jury could reasonably infer in light of common experience that the defendant intentionally killed the victim after deliberate premeditation." *Commonwealth* v. *Latimore, supra.*

The defendant renewed his motion for a required finding of not guilty after presenting his case, which consisted entirely of his own testimony. Because the defendant's evidence may have caused the prosecution's case to deteriorate, the judge was required to consider this motion in light of all the evidence, though again viewing it in the light most favorable to the Commonwealth. See, e.g., *Commonwealth* v. *Basch,* 386 Mass. 620, 622 & n.2 (1982).

The defendant testified that the pretrial statements he made to the two police officers were false. He stated that he shot the victim in self-defense after the victim broke the passenger side window with a knife, pushed the knife "hard" into the side of the defendant's neck and demanded to be let out of the automobile. As the jury were free to disbelieve the defendant's account, there was nothing compelling in this evidence which

---

[4] Although the jury found the defendant not guilty on the charge of unlawfully carrying a firearm, it does not follow that this decision was inconsistent with their conclusion that the defendant shot and killed the victim. In instructing the jury, the judge only briefly addressed the firearm charge. He charged the jury that, to find the defendant guilty on this charge, they must find that he "was carrying [the gun] on his person, carrying meaning that he had control over it and was moving it and that he had control more than temporary, momentary or brief." The judge did not instruct them that, in order to find the defendant guilty of deliberately premeditated murder, they must first find him guilty of unlawfully carrying the gun. Further, during their deliberations the jury asked the judge, "What is the difference between carrying and possession of a weapon?" From these circumstances, no inference arises that, in the minds of the jurors, there was inconsistency between their verdicts on the murder charge and the firearm charge.

caused the prosecution's case to deterioriate. Indeed, as in *Amazeen, supra* at 80 n.5, the defendant's testimony actually contained elements strengthening the prosecution's case. The defendant testified that he was aware that the gun was in the automobile before the victim was picked up. This would support an inference that the weapon was one of design, not opportunity, see *Commonwealth* v. *Almon,* 387 Mass. 599, 605 (1982), and that with its use the defendant acted with deliberate premeditation. The judge, therefore, properly denied the defendant's renewed motion for a required finding of not guilty.

2. *The Defendant's Motion for a New Trial.*

Following the return of the guilty verdict, the defendant moved for a new trial pursuant to Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979), claiming that the verdict was against the weight of the evidence. In his appellate brief, the defendant devotes but one sentence, with no citation of authority, to this argument; the Commonwealth makes no reply. Whether or not the defendant has preserved his rights, see Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975), it is clear that a "judge's response to a new trial motion based on weight is understood to be discretionary," and only in rare cases will a denial of such a motion be reversed on appeal. *Commonwealth* v. *Woods,* 382 Mass. 1, 8 (1980). Unlike *Commonwealth* v. *Woods, supra* at 8-9, where the judge's denial of a motion for a new trial was reversed, this case does involve a "situation of a motion for a new trial based on weight where much of the evidence is subject to discount for witness credibility on either side, and the opinion of the judge who has heard the testimony is highly significant." The judge did not abuse his discretion in denying the motion for a new trial.

3. *Impeachment of the Defendant with Prior Convictions.*

Under G. L. c. 233, § 21 (1986 ed.), certain prior convictions may be used to impeach the credibility of defendants who choose to testify. We have ruled that judges have discretion to exclude such evidence where the danger of unfair prejudice to the defendant outweighs its probative value on the issue of the defendant's credibility. See, e.g., *Commonwealth* v.

*Maguire,* 392 Mass. 466, 470 (1984); *Commonwealth* v. *Chase,* 372 Mass. 736, 750 (1977).

By a motion in limine, in anticipation of testifying at trial, the defendant sought to exclude from evidence prior convictions which qualified under c. 233, § 21. The judge determined that, if the defendant testified, the prosecution would be allowed to impeach him by admitting evidence of his prior convictions of larceny, robbery, and assault by means of a dangerous weapon. The judge also determined, however, that it would unfairly prejudice the defendant to allow inquiry into his prior conviction of armed robbery.

On cross-examination of the defendant, the prosecution inquired about the defendant's prior convictions of larceny, robbery, and assault by means of dangerous weapon. These questions were allowed over the defendant's objection. The judge's determination that the armed. robbery conviction would be excluded demonstrates that he exercised his discretion, thus avoiding reversal for failure to exercise discretion. See *Commonwealth* v. *Guilfoyle,* 396 Mass. 1003, 1004 (1985) (failure to exercise discretion is error of law requiring reversal). Because, contrary to the Commonwealth's contentions, the defendant followed up his motion in limine with trial objections, we review the judge's allowance of these questions for abuse of discretion. Compare *Commonwealth* v. *Maguire, supra* (abuse of discretion standard) with *Commonwealth* v. *Boyer,* 400 Mass. 52, 57 (1987) (without trial objections, admission of prior convictions reviewed only to safeguard against miscarriage of justice).

The judge did not abuse his discretion in allowing inquiry into the defendant's past convictions of larceny, robbery, and assault by means of a dangerous weapon where the defendant was currently charged with, inter alia, armed robbery and murder. While the past convictions were of crimes somewhat similar to those with which the defendant was currently charged, thus raising the danger of unfair prejudice, see *Commonwealth* v. *Chase, supra; Commonwealth* v. *DiMarzo,* 364 Mass. 669, 680-682 (1974) (Hennessey, J., concurring), we cannot say that allowing inquiry into these past convictions was erroneous

as a matter of law. In § 21 of c. 233, the Legislature has determined that a broad range of prior convictions, not just those involving honesty, are probative of a witness's credibility. See *Commonwealth* v. *Elliot,* 393 Mass. 824, 835 (1985) (Lynch, J., concurring). It is significant that the judge twice carefully instructed the jury that they were to consider the evidence of prior convictions solely to aid them in assessing the defendant's credibility. We also note that the prosecution did not mention any of the defendant's prior convictions in its closing argument. These factors tend to lessen the possibility of unfair prejudice to the defendant. In the circumstances of this case, the judge was not required to exclude evidence of the defendant's prior convictions of larceny, robbery, and assault by means of a dangerous weapon.

We also reject the defendant's contention that the judge's allowance of inquiry into the prior convictions was improperly motivated by a desire to inform the jury that the defendant had a prior criminal record. Where a judge admits prior convictions for reasons which increase the dangers of unfair prejudice, he commits reversible error. *Commonwealth* v. *Guilfoyle, supra* (error to admit prior convictions in order to show defendant's propensity to commit crime charged). On full review of the dialogue between the judge and counsel concerning the admission of the prior convictions, we determine that the basis for the judge's rulings in this case was to provide for the jury consideration allowed by c. 233, § 21.

4. *Relief under G. L. c. 278, § 33E.*

The defendant urges us to exercise our power under G. L. c. 278, § 33E, to reduce his conviction to murder in the second degree. "Regard for the public interest impels us to use with restraint our power under § 33E to modify the jury's verdict. On the other hand . . . our obligations under § 33E require the most serious deliberation." *Commonwealth* v. *Williams,* 364 Mass. 145, 151 (1973). We have carefully reviewed the entire record. We conclude that the interests of justice do not require us to exercise our power under § 33E.

*Judgment affirmed.*