### COMMONWEALTH *vs.* ALBERT D. PIKE.

Worcester. September 9, 1999. - November 4, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Controlled Substances. Doctor,* Controlled substances. *Witness,* Expert. *Evidence,* Expert opinion, Admissions and confessions, Relevancy and materiality, Intent, Medical record. *Practice, Criminal,* Required finding, Admissions and confessions, Argument by prosecutor, Sentence.

At the trial of indictments alleging unlawful dispensing of class B and C controlled substances and filing of false Medicaid claims, the evidence, including reasonable inferences drawn therefrom, was sufficient to allow the jury to conclude beyond a reasonable doubt that the defendant physician had acted in bad faith and for no legitimate medical purpose in dispensing prescriptions [321-322], and that he wrongfully wrote the prescriptions knowing that they would serve as the basis for unlawful Medicaid claims [322-323]; further, the judge correctly denied the defendant's motions for required findings of not guilty at the close of all the evidence [323-324].

At the trial of a physician on indictments alleging unlawful dispensing of class B and C controlled substances, the judge properly allowed expert testimony concerning methods of operation of doctors and drug users in illegal drug diversion operations. [324-325]

In a criminal case, an incriminating statement of the defendant was properly admitted in evidence as an admission, where, even if made in a joking manner, it reflected on the defendant's state of mind. [325-326]

Hospital records that complied with the statutory requirements of G. L. c. 233, § 79, were properly admitted in evidence at a criminal trial where they were relevant to the Commonwealth's theory of prosecution. [326]

Remarks of the prosecutor in closing argument at a criminal trial were not improper. [326-327]

INDICTMENTS found and returned in the Superior Court Department on December 5, 1995, and August 5, 1996, respectively.

The cases were tried before *James F. McHugh, III,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*George C. Deptula* for the defendant.

*LaDonna J. Hatton,* Assistant Attorney General (*Peter Clark,* Assistant Attorney General, with her) for the Commonwealth.

GREANEY, J. The defendant, a psychiatrist, was convicted of multiple charges of unlawfully dispensing class B and C controlled substances, G. L. c. 94C, §§ 19, 32A, and 32B, and additional charges of filing false Medicaid claims, G. L. c. 118E, § 40. The defendant argues that the Commonwealth failed to present sufficient evidence to convict him of any of the charges. We reject the argument. We also reject the defendant's contentions that the trial judge erred in admitting evidence, that the prosecutor's closing argument contained remarks that were improper and prejudicial, and that he should be resentenced. Accordingly, we affirm the defendant's convictions.

1. We take up first the defendant's argument that he was entitled to required findings of not guilty. In essence, the Commonwealth's theory of the case was that the defendant was engaged in a drug diversion scheme whereby he unlawfully prescribed to his patients controlled substances (drugs) with a high street resale value. These patients would then either sell these drugs for illegal narcotics or take the prescription drugs to enhance their "high" of other illicit drugs. In either event, according to the Commonwealth, the defendant's illegitimate prescription practices ensured that his patients would return for additional visits (and drugs), thereby maintaining or increasing the defendant's billing to Medicaid. In support of this theory, the Commonwealth presented the following evidence in its case-in-chief.[1]

The defendant, who was an approved Medicaid provider, worked as a psychiatrist at Mental Health Resources (MHR) in Leominster. Under his arrangement with MHR, the defendant received seventy per cent of the accounts receivable that he generated, and the remainder was applied toward MHR's office overhead and expenses. The defendant later became unhappy with this arrangement and tried to renegotiate his share to eighty per cent because he felt he was entitled to more money.

A portion of the defendant's practice was devoted to treating Medicaid patients who suffered from drug or alcohol dependency, as well as various psychiatric problems. The Commonwealth introduced the defendant's own handwritten office

---

[1]The defendant moved for required findings of not guilty at the close of the Commonwealth's case as well as at the close of all the evidence. We shall evaluate the sufficiency of the evidence at both stages of the trial. See *Commonwealth* v. *Basch*, 386 Mass. 620, 622 n.2 (1982); *Commonwealth* v. *Kelley*, 370 Mass. 147, 149-150 & n.1 (1976).

notes regarding his treatment of ten Medicaid patients that served as the basis of the indictments on which he was convicted.[2] According to the defendant's notes, most of these patients sought his assistance in overcoming their addictions to heroin or other substances. As "treatment" for the addictions, the defendant virtually always prescribed drugs such as methadone, Valium, clonidine, klonopin, or some combination thereof. Most of these substances were addictive and had a high resale value on the street. The defendant usually prescribed these drugs on a patient's very first office visit based solely on the information the patient presented without any objective verification of the patient's claims.

The Commonwealth presented well-credentialed expert medical witnesses who practiced in the fields of psychiatry, addiction treatment, and the psychopharmacology of addiction. These experts testified that the extremely high dosage levels and the frequency with which the defendant gave prescriptions to patients served no legitimate medical purpose. They also testified that the defendant's prescription practices were not designed actually to treat the patients' underlying problems, but, rather, further to exacerbate their problems by giving them addictive substances that enabled their habits. For instance, the defendant gave patients prescriptions that were supposed to last for a certain time period, but then refilled those prescriptions before that time had expired if the patients came in before their next scheduled visit. Patient M, to whom the defendant prescribed six different medications on the first visit, overdosed on these medications and went into a "stupor." Patient M's father told the defendant that he suspected his son (Patient M) was getting prescriptions from other doctors. Nevertheless, the defendant's response to this information was to increase Patient M's dosage of klonopin, the most habit-forming of the drugs prescribed to Patient M. The Commonwealth's experts testified (with a basis in the evidence to support their testimony) that the defendant's treatment of patients was well below an acceptable standard of care, so far "beyond the pale" to be "out of the ballpark," and "medically unwarranted and dangerous."

The defendant also prescribed methadone to his patients who claimed to be in "chronic pain" without performing any physical examination or tests to confirm these self-reports. Some of

---

[2]These patients, none of whom testified at trial, were referred to throughout the trial by pseudonym, such as Patient A.

these methadone prescriptions were in such high doses, relative to the patients' symptoms that the defendant was allegedly treating, that they served no legitimate medical purpose and were completely inconsistent with the manner in which drugs should be used in a legitimate treatment program. The defendant was also quick to give new prescriptions to his patients who claimed their prescriptions were lost or stolen, even though some of these patients had a history of being untruthful with the defendant.[3]

On another occasion, Patient H came into the defendant's office requesting a prescription for methadone. The defendant initially declined to give this prescription, but later did so when the patient returned to the office and assured the defendant that he found a pharmacy in Worcester that would fill a three-day supply of methadone. The defendant gave the patient the prescription despite noting that "this [was] unlikely in view of current law." The defendant also continued to prescribe drugs to Patient H even after that patient reported to the defendant that he had given some of his prescribed Valium to his father.

The Commonwealth also presented the expert testimony of two law enforcement officers who possessed knowledge of the habits of drug addicts; the street value of the substances prescribed by the defendant; and the role Medicaid benefits played in diverting prescription drugs to an addict population. These experts described the general relationship in a drug diversion scheme between the drug prescriber, the addict, and the pharmacist. One of the experts testified that drug addicts frequently exchange information on where they can easily obtain prescription pharmaceuticals, including the names of doctors who will provide them with drugs of their choice. This expert explained that Medicaid would then pay the doctor for the office visit as well as the addict's prescription, minus a de minimis copayment by the patient. The experts on drug diversion schemes had no direct connection to this particular case and did not offer any opinions directly relating to the defendant.

---

[3]One of the defendant's patients requested a one-month supply of Valium because the patient was supposedly going to Maine because his mother had died. The patient returned to the defendant's office two days later and obtained another prescription for Valium because he claimed to have lost the previous prescription. The patient's mother later called the defendant stating she was alive and lived in Lancaster. Despite the fact that the patient had obviously lied to him to obtain more drugs, the defendant nevertheless continued to prescribe Valium to this patient.

Finally, there was evidence, discussed later in this opinion, that the defendant stated that he was "the local drug pusher."

We evaluate the adequacy of the Commonwealth's evidence under well-defined standards. We have recited the evidence in the light most favorable to the Commonwealth, as we must, and now inquire whether this evidence was sufficient to satisfy *any* rational trier of fact of the essential elements of the crimes beyond a reasonable doubt. See *Commonwealth* v. *Woodward*, 427 Mass. 659, 682 (1998); *Commonwealth* v. *Cordle*, 412 Mass. 172, 175 (1992). "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding." *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988). Moreover, "[a] conviction may be properly based entirely on circumstantial evidence so long as that evidence establishes the defendant's guilt beyond a reasonable doubt." *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992). Where the evidence is largely circumstantial, "it is not essential that the inferences drawn should be the only necessary inferences . . . . It is enough that [the inferences] be reasonable and possible." *Id.*, quoting *Commonwealth* v. *Merrick*, 255 Mass. 510, 514 (1926). If conflicting inferences are possible from the evidence, "it is for the jury to determine where the truth lies." *Commonwealth* v. *Wilborne*, 382 Mass. 241, 245 (1981), quoting *Commonwealth* v. *Amazeen*, 375 Mass. 73, 81 (1978).

The crux of the defendant's argument is that there was no "factual evidence" of his bad faith and lack of legitimate medical purpose in prescribing the drugs to his patients. Stated differently, he challenges the sufficiency of the evidence to prove the crucial intent elements of G. L. c. 94C, §§ 19, 32A, and 32B. A defendant's intent is "not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at trial." *Commonwealth* v. *Lombard*, 419 Mass. 585, 589 (1995), quoting *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). The question whether the defendant acted in bad faith is a question of fact for the jury. See *Commonwealth* v. *Miller*, 361 Mass. 644, 656 & n.2 (1972).

Contrary to the defendant's contentions, the Commonwealth presented "factual evidence" (in addition to expert testimony) from which the defendant's guilty mind could be inferred beyond a reasonable doubt. The Commonwealth introduced the

defendant's handwritten notes regarding his treatment of his patients, the hospital records of some of the patients, the prescriptions written by the defendant, and a Medicaid database printout describing the defendant's services, prescriptions, and amount paid for each patient visit. This evidence contained a plethora of underlying facts which (when considered in conjunction with the Commonwealth's expert testimony and the admission made by the defendant) demonstrated that he had prescribed highly addictive drugs, often specifically requested by name by his patients, in short intervals and at dangerously high dosage levels in a manner which served no legitimate medical purpose in relation to the medical problems the patients presented. Moreover, contrary to acceptable medical practices, the defendant prescribed drugs for "chronic pain" without any supporting objective evidence that his patients suffered from this problem. Finally, the defendant continued to prescribe drugs to patients who made suspicious claims of lost, stolen, or destroyed prescriptions within days of being issued the original prescriptions.

The Commonwealth's evidence, and the reasonable inferences that could be drawn from it, were sufficient to allow the jury to conclude beyond a reasonable doubt that the defendant acted in bad faith and for no legitimate medical purpose.[4] We have previously upheld convictions based on somewhat similar evidence. See *Commonwealth* v. *Comins*, 371 Mass. 222, 232-233 (1976), cert. denied, 430 U.S. 946 (1977) (defendant prescribed drugs of choice to undercover officers in short intervals without conducting physical examination or taking medical history). See also *Strasnick* v. *Board of Registration in Pharmacy*, 408 Mass. 654, 662 (1990) ("The dispensing of additional medication within the time period that was covered by an earlier prescription may be used as evidence that the medication was not dispensed for a legitimate medical purpose").

We also reject the defendant's challenge to the sufficiency of the evidence regarding his convictions for false Medicaid claims under G. L. c. 118E, § 40. These convictions were based on the defendant's having furnished prescriptions which he knew were

---

[4]In claiming there was insufficient evidence of his bad faith, the defendant relies heavily on the generally undisputed facts that he took fairly detailed notes of his patients' history and he spent the allotted time with each patient. However, these are only two factors in the total analysis and do not compel a contrary conclusion.

illegal and would serve as the basis of claims for Medicaid payments. As the defendant acknowledges, his challenge to his convictions under G. L. c. 118E, § 40, essentially rises or falls on our conclusion on his predicate acts in issuing illegal prescriptions. Because we have concluded that his convictions of the latter must be affirmed, we likewise conclude that the evidence was sufficient to warrant findings by the jury beyond a reasonable doubt that the defendant wrongfully wrote prescriptions knowing that these prescriptions would later serve as the basis for unlawful Medicaid claims.[5] The defendant's motions for required findings of not guilty on these charges were likewise properly denied.

The judge also properly denied the defendant's motion for required findings of not guilty on all the charges of which he was convicted at the close of all the evidence. The Commonwealth's case did not deteriorate after the Commonwealth rested. *Commonwealth* v. *Basch*, 386 Mass. 620, 622 n.2 (1982). "Deterioration would occur not because the defendant contradicted the Commonwealth's evidence (*Commonwealth* v. *Walker*, 401 Mass. 338, 343-344 [1987]), but because evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect." *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995), and cases cited.

Several of the defendant's patients, whose treatments were not the subject of the charges on which he was convicted, testified on his behalf and attested to his good character and reputation for truthfulness in the community. The defendant presented medical experts who testified that the defendant's prescription practices were for legitimate medical purposes and within the acceptable standard of care for his profession. The defendant took the witness stand and defended his treatment plans with respect to the patients at issue. While this evidence contradicted, and tended to undermine, the potency of the Commonwealth's case, it falls well short of demonstrating that the Commonwealth's evidence was "conclusively incorrect." *Kater* v. *Commonwealth*, *supra* at 20. See *Commonwealth* v. *Zevitas*, 418 Mass. 677, 680 (1994); *Commonwealth* v. *Hastings*, 22

---

[5]We do not suggest that in every instance the Commonwealth can prove a violation of G. L. c. 118E, § 40, by simply establishing a violation of G. L. c. 94C, §§ 19, 32A, or 32B. We simply hold that such a conclusion is warranted based on the facts and circumstances present in this case.

Mass. App. Ct. 930, 931 (1986). The defendant's evidence raised issues of credibility and weight which were appropriately submitted to the jury. See *Commonwealth* v. *McGahee*, 393 Mass. 743, 750 (1985).

In sum, considered as a whole, this is not a case that rested solely on a clash between medical experts over the appropriateness of the defendant's prescription practices, thereby resulting in a record where the Commonwealth's proof has been left either in a state of equipoise or a state of showing culpability only by a preponderance. The standard of proof for criminal liability was satisfied.

2. We next take up the defendant's arguments that the judge made several erroneous evidentiary rulings.

(a) The judge, following a voir dire of one of the Commonwealth's expert police witnesses, permitted expert testimony by police officers concerning the methods of operation of doctors and drug users in drug diversion operations.[6] The defendant claims that this testimony was improperly admitted.[7]

The admission of expert testimony rests in the broad discretion of the judge and will not be disturbed unless the exercise of that discretion constitutes an abuse of discretion or error of law. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). See also *Commonwealth* v. *Federico*, 425 Mass. 844, 847 (1997), and cases cited. Expert testimony "is admissible whenever it will aid the jury in reaching a decision." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982). Moreover, "a question calling for an opinion which is in the domain of the expert's professional knowledge is not necessarily to be excluded merely because the expert's conclusion reaches or approaches the ultimate issue before the jury." *Commonwealth* v. *Colin C.*, 419 Mass. 54, 59 (1994).

---

[6]We reject the defendant's characterization of this evidence as "profile" testimony. Testimony regarding a criminal profile relates to the typical attributes or characteristics "which are common to some or most individuals who commit particular crimes." *Commonwealth* v. *Day*, 409 Mass. 719, 723 (1991). See *Commonwealth* v. *Federico*, 425 Mass. 844, 850 (1997). That is not the type of testimony given in this case, which was "more akin to a description of the modus operandi of" doctors and patients in a drug diversion scheme. *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 669 (1992), *S.C.*, 416 Mass. 1001 (1993).

[7]The defendant also claims that these witnesses were not qualified to render expert opinions on these matters. The defendant did not make this argument to the judge. The record establishes that the police officers who testified as experts had ample training and experience on which to base their opinions.

The manner in which patients and doctors operate to divert medical prescriptions to third persons is not a subject matter within the common knowledge of the average juror. "Testimony about such operations, therefore, is helpful to the fact finders and is admissible [because] it is 'more akin to a description of the modus operandi of [drug diverters] than a "profile" of a drug dealer.' " *Commonwealth* v. *Robinson,* 43 Mass. App. Ct. 257, 259-260 (1997), quoting *Commonwealth* v. *Dennis,* 33 Mass. App. Ct. 666, 669 (1992), *S.C.,* 416 Mass. 1001 (1993). See *Commonwealth* v. *Zwickert,* 37 Mass. App. Ct. 364, 368 (1994). The judge was well within his broad discretion in admitting the testimony.

(b) The defendant claims error in the introduction in evidence of the statement he made to a third party that, "I'm sure you've heard of me, I'm the local drug pusher." The witness to whom the defendant made the statement indicated that the defendant laughed and stated that he was "only joking." The witness also testified that she took the defendant's comment to be a joke.

The defendant argues that the statement was made in jest, and, consequently, was not relevant to his "prescribing intent." The defendant further contends that the prejudicial effect of this comment was outweighed by its lack of probative value. The judge, after careful consideration, had admitted the statement on the ground that it could be found by the jury to be an admission by the defendant, that its probative value outweighed its prejudicial effect, and that "it [was] not the auditor's view of those words that [was] relevant in determining admissibility, although that [was] something the jury may consider." This determination rests in the sound discretion of the judge and will be upheld absent palpable error. See *Commonwealth* v. *Valentin,* 420 Mass. 263, 270 (1995). See also *Commonwealth* v. *Dunn,* 407 Mass. 798, 807 (1990).

"An admission in a criminal case is a statement by the accused, direct or implied, of facts pertinent to the issue, which although insufficient in itself to warrant a conviction tends in connection with proof of other facts to establish his guilt." *Commonwealth* v. *DiMonte,* 427 Mass. 233, 243 (1998), quoting *Commonwealth* v. *Lewin (No. 2),* 407 Mass. 629, 631 (1990). As has been stated, in order to convict the defendant of illegally prescribing drugs, the Commonwealth had to show that he prescribed the drugs in bad faith and for no legitimate medical purpose. See *Commonwealth* v. *Comins, supra* at 232-233.

The defendant's statement, even if made in a joking manner, had a bearing on his state of mind. The statement tends to show the defendant's awareness that his prescription practices were for something other than a legitimate medical purpose. The context in which the statement was made was put before the jury, defense counsel had ample opportunity to cross-examine the witness about the statement, and the defendant had the opportunity (although he chose not to avail himself of it) to explain the statement when he testified. Whatever weight, if any, to be given the statement was for the jury to decide. The judge's ruling was not in error.

(c) The defendant suggests that it was error to allow the introduction of various hospital records, which he had not previously seen, relating to his patients. The defendant simply states without citation of authority or anything approaching argument that "[t]he problems with the admissions of the medical records include relevancy, hearsay, due process and confrontation [and] [t]here was no factual predicate showing that [he] should have known about these records."

The contention, such as it is, has no merit. The hospital records complied with the requirements for admissibility set forth in G. L. c. 233, § 79. They provided the jury with relevant information which allowed them to evaluate the Commonwealth's theory of prosecution and corroborated, at least in part, the conclusions arrived at by the Commonwealth's medical experts. There was no abridgment of the defendant's due process or confrontation rights.[8]

3. The defendant asserts that portions of the prosecutor's closing argument were improper because they went beyond reasonable inferences that could be drawn from the evidence and constituted a prejudicial attempt to inflame the jury. The defendant takes issue with the prosecutor's comments or implications that the case was about drug dealing; that the

---

[8]We also reject the defendant's claim that he was denied due process and the right of confrontation because the Commonwealth relied on treatment records rather than calling the ten patients as trial witnesses. The Commonwealth is not required to present any specific witness to prove its case. There is no indication that the Commonwealth "wilfully attempted to withhold or conceal significant evidence by refusing to call" any of the ten patients. *Commonwealth* v. *Lo*, 428 Mass. 45, 51 (1998). The defendant was not prevented from calling any of the ten patients to testify concerning matters that he complains may not have been contained in their treatment records. See *Commonwealth* v. *Riley*, 22 Mass. App. Ct. 698, 701 (1986).

defendant's "joke" about being a drug pusher was a "window into [his] soul" that showed his "reputation in the community where it mattered"; that the defendant prescribed the addictive drugs to his patients to ensure their return so he could continue to bill Medicaid; that the defendant knew how to "control" patients through his previous work experience at Bridgewater State Hospital; that Patient A participated in the illicit drug market; and that the defendant "did not believe that he would ever be brought to account for the terrible things which he did to these people." The defendant did not object to any portion of the prosecutor's closing argument.

We have reviewed the criticized comments in light of the prosecutor's entire closing, the judge's instruction to the jury that closing arguments were not evidence, and the evidence presented at trial. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990). We also recognize that a jury are capable of sorting out hyperbole and rhetoric in the closing arguments of lawyers and that a certain amount of both devices is usually present in all closing arguments. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 451 (1993). We conclude that the remarks were not improper.

4. Finally, the defendant requests that we order the Superior Court to resentence him "in accord with physician crime standards" which, he claims, have been applied in comparable circumstances in Federal courts. The sentences imposed on the defendant were within the range for the crimes committed, and they were directed by the judge after his careful consideration of appropriate factors, including factors favorable to the defendant. There is no reason to order resentencing.

*Judgments affirmed.*