NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-132

COMMONWEALTH

vs.

JEROME FLETCHER-DYMOND.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial the defendant was convicted of assault and battery of the victim by means of a dangerous weapon and related offenses. He challenges the denial of a motion to dismiss the indictment, the admission of testimony on cell site location information (CSLI), the denials of motions for required findings of not guilty, and remarks made by the prosecutor during closing argument. We affirm.

Background. We summarize the evidence using the familiar standard of Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), reserving additional facts for our later discussion. The defendant was living with the victim and her children at the victim's home. On the date in question, the victim was sitting

in her kitchen in the evening when she saw the defendant drive into the driveway.  Because he normally parked on the street, the victim went outside to ask why he was parking in the driveway.  The defendant drove away and returned five to ten minutes later.  He knocked on the front door and the victim let him inside the house.  The two exchanged pleasantries after which the defendant went to the basement to retrieve his tattoo equipment.

As they continued talking, the victim heard a clicking noise from something the defendant was doing in his right pocket.  She inquired about the noise.  After saying there was nothing in his pocket, the defendant took the victim's phone, removed a metal baton from his right pocket, expanded it, and started beating the victim with the baton.  He beat her "everywhere," including on her head and back.  She tried to grab the baton and, at one point, it fell on the floor.  The victim then saw the defendant take a silver knife out of his pocket.

Screaming to her children, the victim ran upstairs.  She knocked on the bathroom door and told her son to stay in the shower.  The victim then ran into her daughter's room.  They closed the door and the victim held it closed while the defendant kicked, banged, and punched the door.  The victim and

2

her daughter both called 911; when a neighbor called the victim, she also asked him to call 911.

The victim heard a voice outside the door that she believed to be her son's so she opened the door slightly. The defendant pushed his way into the room. The victim screamed at her daughter to run and the defendant "came at" the victim with the knife and started stabbing her. The defendant stabbed the victim repeatedly, cutting her face, her tongue, her hand, and her elbow. Trying to end the attack, the victim played dead; in response, the defendant grabbed her by the hair and slit her neck. One of the 911 calls remained active at the time of the knife attack and a recording of it was played for the jury.

At trial, the victim and her son identified the defendant as the victim's assailant. The daughter's identification of the defendant was also in evidence.

Discussion. 1. Motion to dismiss the indictment. The defendant maintains that the evidence before the grand jury was insufficient to establish that he was the assailant. We are not persuaded. "When reviewing the sufficiency of an indictment, the grand jury evidence must be viewed in the light most favorable to the Commonwealth." Commonwealth v. Barbosa, 477 Mass. 658, 675 (2017). To survive such a motion, the Commonwealth must show that there was "sufficient evidence to

3

establish the identity of the accused." Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). "[A] requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984).

The evidence was sufficient. The victim was the defendant's sister. She testified extensively and in detail about his protracted attack on her in her home. She described him, including the clothes he was wearing on the night of the attack. A responding police officer testified about interviewing the victim's children (the defendant's niece and nephew) who also identified him as the assailant. The cited contradictions in various grand jury testimony do not undermine this overwhelming evidence of identity. The motion was properly denied.

2. CSLI evidence. The defendant claims that the Commonwealth's expert, detective lieutenant Brian McManus of the Woburn police department, who testified regarding the CSLI data from the defendant's cellular telephone, was not properly qualified to testify as an expert witness. "A trial judge has wide discretion to qualify an expert witness and to decide whether the witness's testimony should be admitted. Such a

4

decision will be reversed only where it constitutes an abuse of discretion or other error of law" (quotation and citation omitted). Commonwealth v. Javier, 481 Mass. 268, 285 (2019). "The crucial issue, in determining whether a witness is qualified to give an expert opinion, is whether the witness has sufficient education, training, experience and familiarity with the subject matter of the testimony." Commonwealth v. Richardson, 423 Mass. 180, 183 (1996), quoting McLaughlin v. Selectmen of Amherst, 422 Mass. 359, 361-362 (1996).

Before trial, the defendant filed a motion in limine to exclude CSLI from the defendant's cellular telephone on various grounds including that Det. McManus was not qualified to authenticate, explain, or opine about the CSLI data suggesting the defendant's cellular telephone was in the vicinity of the victim's house at the time of the stabbing. The judge conducted a voir dire before the jury were empaneled and denied the motion. We conclude the judge did not abuse his discretion.

The evidence adduced at the voir dire showed that Det. McManus had a master's degree with a concentration in geographic information science, which focused on "the use of spatial databases, analyzing data, and . . . creating spatial databases." He had received training during his law enforcement career in CLSI, cellphone forensics, computer forensics, and

5

multiple types of mapping software.  Det. McManus trained

detectives on the use of digital evidence, including CSLI data.

In addition to his formal education, he had on-the-job

experience; Det. McManus testified that, as a detective, he

worked "hundreds of times" with cell site location data.  This

was an adequate evidentiary basis for the judge's conclusion

that Det. McManus was qualified to offer an opinion as an

expert.

> "It was not an abuse of discretion to allow [the expert] to
> testify to the well-established facts that cellular
> telephones connect to towers via radio signals, that CSLI
> records indicate the tower to which a particular cellular
> telephone connected for a particular call, and that the
> device must be within the coverage area of the tower in
> order to connect."

Commonwealth v. Wilkerson, 486 Mass. 159, 174 (2020).[1]  In any

event, as the Commonwealth notes in its brief, the CSLI evidence

as explained by Det. McManus merely corroborated an otherwise

strong case against the defendant.

---

[1] We are equally unpersuaded by the defendant's argument about the reliability of the software program the detective used.  At the pretrial hearing, he was cross-examined extensively about the reliability and verifiability of various types of mapping software and he testified that he used the "top of the line mapping software" for this case.  The judge ruled that issues relating to validating the software went to the weight, not the admissibility, of the evidence.  This was grounded in the evidence before him and was not error.  See Commonwealth v. Shepherd, 493 Mass. 512, 536 (2024).

3. Motions for required findings of not guilty. The defendant maintains that the judge erred by denying his motions for required findings of not guilty made at the close of the Commonwealth's case-in-chief and at the close of all the evidence. Both motions were properly denied.

We first address the defendant's argument that he was entitled to required findings of not guilty at the close of the Commonwealth's case. "The standard for evaluating a motion for a required finding of not guilty is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. James, 424 Mass. 770, 784 (1997), quoting Latimore, 378 Mass. at 677.

The defendant's claim that the evidence was insufficient fails because, at its core, it asks us to view the evidence in a light favorable to him. This we cannot do. See Latimore, 378 Mass. at 677. It suffices to note that the victim and two other members of the defendant's family -- who were eyewitnesses to the crimes -- identified the defendant as the perpetrator. Their testimony was corroborated by medical and forensic evidence in addition to CSLI from the defendant's cellular telephone. In addition, the defendant argues that the absence

of evidence regarding motive and deoxyribonucleic acid (DNA) testing rendered the evidence insufficient.  This argument fails because the Commonwealth is not required to prove motive, see Commonwealth v. Brooks, 422 Mass. 574, 581 (1996), and the question before us is not what the Commonwealth did not present, but what it did.  This evidence was sufficient to support the convictions.

The defendant renewed his motion for required findings of not guilty after presenting his case, which consisted solely of his own testimony denying the allegations and claiming that he was with his girlfriend at the time of the incident.  "Because the defendant's evidence may have caused the prosecution's case to deteriorate, the judge was required to consider this motion in light of all the evidence, though again viewing it in the light most favorable to the Commonwealth."  Commonwealth v. Walker, 401 Mass. 338, 343 (1987).  See Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006).  The Commonwealth's case did not deteriorate.  "Deterioration would occur not because the defendant contradicted the Commonwealth's evidence but because evidence for the Commonwealth necessary to warrant submission of the case to the jury is later shown to be incredible or conclusively incorrect" (citations omitted).  Commonwealth v. Pike, 430 Mass. 317, 323 (1999).  Here, the jury were free to

8

disregard the defendant's testimony in its entirety and there was no other compelling evidence that caused the Commonwealth's case to deteriorate.  See Walker, supra at 343-344.  See also O'Laughlin, supra at 204 ("the fact that the defendant has presented evidence that he did not [commit the crime] does not affect the sufficiency of the evidence unless the contrary evidence is so overwhelming that no rational jury could conclude that the defendant was guilty").

4. Closing argument.  The defendant challenges two remarks by the prosecutor in her closing.  "A defendant's challenge to a specific part of a closing argument is analyzed in 'the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury.'"  Commonwealth v. Shanley, 455 Mass. 752, 773 (2010), quoting Commonwealth v. Whitman, 453 Mass. 331, 343 (2009).  Because the defendant did not object, we review to determine whether there was error, and if so, whether the error created a substantial risk of a miscarriage of justice.  Commonwealth v. Daigle, 379 Mass. 541, 549 (1980).

"We have said that the prosecutor may comment on defense tactics that the jurors have witnessed themselves."  Commonwealth v. Roberts, 433 Mass. 45, 56 (2000), citing Commonwealth v. Jackson, 428 Mass. 455, 463 (1998).  Compare Commonwealth v. Gentile, 437 Mass. 569, 581 (2002) (labeling

9

defense strategy "despicable" was "a disparagement of the defense" that "smacks more of an ad hominem attack").  Here, defense counsel characterized aspects of the police investigation as "[d]espicable."  As the judge acknowledged during a sidebar after defense counsel's closing, the prosecutor was "entitled to respond to arguments made by [the] defense."  See Commonwealth v. Witkowski, 487 Mass. 675, 686 (2021).  The prosecutor did just that.  First, in describing the defense theory of the case, she asked the jurors not to "leave [their] common sense and life experience at the jury deliberation room door," but to "[b]ring it in and apply it to the arguments the Defendant wants you to buy in this case because only you can decide as the jury, whether the arguments put forth by counsel on behalf of the Defendant truly matter in deciding the ultimate issues in this case."  This was not error, but rather a preview of part of the instructions by the judge and a nod to the jury's role.  See Commonwealth v. Cook, 419 Mass. 192, 203 & n.9 (1994).

Context assists us in this analysis; the judge instructed the jury on three separate occasions that closing arguments are not evidence, or that it was the purview of the jury to evaluate the evidence.  In reviewing the contested statement, we presume that the jury understood and followed these instructions.

10

Commonwealth v. Hernandez, 473 Mass. 379, 392 (2015).  Under this standard, and considering the overwhelming evidence against the defendant, we are not persuaded that the statement constituted error.

The defendant also challenges the prosecutor's characterization of his cross-examination of a police officer as giving the witness "a hard time."  It is well established that "[a] prosecutor may fairly respond to an attack on the credibility of the Commonwealth's witnesses."[2]  Commonwealth v. Monzon, 51 Mass. App. Ct. 245, 253 (2001).  Describing the examination as "a hard time" was a fair response to the defense

_____

[2] Unlike the cases relied on by the defendant, this was not a personal attack on the defense lawyer.  Compare Commonwealth v. Grandison, 433 Mass. 135, 143 (2001) (improper for prosecutor to suggest to jury that it was impermissible for defense counsel to question veracity of police officers); Commonwealth v. Burts, 68 Mass. App. Ct. 684, 687-688 (2007) (improper for prosecutor to urge jurors to be angry at defense counsel).

closing and an appropriate counter to a defense tactic witnessed by the jurors.   There was no error.

Judgments affirmed.

By the Court (Vuono, Singh & Hershfang, JJ.[3]),

Clerk

Entered:   April 2, 2025.

---

[3] The panelists are listed in order of seniority.